**Aaron M. Rubin, Esq.**
99 Wall Street Suite 1130
New York, New York
212-725-4600
arubin@amresquire.com

January 17, 2022

*By ECF*
The Honorable Jed S. Rakoff
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: United States v. Robert Lenard Booth, 21 Cr. 652 (JSR)

Dear Judge Rakoff,

  I am counsel for Defendant Mr. Booth and write in further support of Mr. Booth's motion to suppress certain statements made at JFK Airport. At the oral argument on Defendant's motion on January 10, the Court requested further briefing on, among other things, the admissibility of certain statements made by Defendant prior to his request for counsel. In particular, the Court asked counsel to identify areas of the questioning during the non-custodial portion of the interview that went beyond the scope of the routine questions that are typically posed during an initial border interview.[1]

  The Government claims that all of the questioning prior to Mr. Booth's request for an attorney and during the initial border questioning is admissible because his statements were made in response to routine inquiries that are permitted by United States v. FNU LNU, 653 F.3d 144, 154 (2d. Cir. 2011) ("a reasonable traveler will expect some constraints as well as questions and follow-up about his or her citizenship, authorization to enter the country, destination, baggage, and so on."), and United States v. Yilmaz, 508 Fed.Appx.49, 52 (2d Cir. 2013) (finding admissible statements in response to noncustodial questioning that is "routine and relevant to his admissibility and the admissibility of his effects… [such as] where he lived, where he was coming from, how long he had spent in Canada, the purpose of his trip, his occupation, whether he had any goods to declare, and for the name of the owner of his vehicle.")

  It is clear, however, that a portion of the initial questioning was beyond the scope of inquiries that are "routine and relevant to his admissibility" into the country.

  While the interview began with routine questions about Mr. Booth's origin of travel, citizenship, destination and occupation, (Tr. 2-9), Agent Deutsch's questions regarding companies owned by Mr. Booth were beyond the scope of routine inquiries, and plainly more

---

[1] We nevertheless preserve our argument, made in our moving papers, that all of the statements should be suppressed because the initial screening interview was in name only and part of the custodial interrogation for which Miranda warnings were required but not yet given.

Honorable Jed S. Rakoff, U.S.D.J.
January 17, 2022
Page 2 of 2

relevant to eliciting incriminatory statements relating to the ownership of shell companies and international business such as those alleged in the Complaint (e.g., ¶¶ 11, 13, 14, 21, 22, 26-29).

Accordingly, we respectfully request for the suppression of Mr. Booth's statements in response to these questions, appearing in the transcript from pages 9:22 - 10:10, 11:15 – 11:21, and 12:3 - 12:5.[2]

Additionally, the Government seeks to introduce statements made by Mr. Booth subsequent to the reading of the Miranda warnings on page 13 because it claims that he expressed his agreement to waive those rights until the point of requesting an attorney on page 22:23. However, we respectfully request that the statements by Mr. Booth from pages 13 to 22 be suppressed as well, because his purported waiver was neither clear nor voluntarily made. First, Mr. Booth declined to sign the waiver form, which suggests his reluctance to proceed. Agent Deutsch then posed a compound question: "Ok, we're clear you understand and you want [sic] talk to us and you want us to explain what's going on." (Tr. 15:24 – 16:2) The compound question contained therefore asked three questions in one, consisting of: (1) you understand? (2) you want to talk to us? (3) you want us to explain what's going on?

Mr. Booth only answered in the affirmative to the last of the three questions, stating, "Yes. I want you to explain to me what's going on." (Tr. 16:3) In the absence of clarity from a written waiver of rights, Mr. Booth's response here did not otherwise establish a clear or convincing waiver of his rights and voluntary desire to make statements, instead suggesting that he merely had understood Agent Deutsch to be asking if he wanted to hear an explanation about why he was being detained.

For the foregoing reasons, and those in our motion papers, we respectfully request suppression of the above described statements.

Respectfully submitted,

s/

Aaron M. Rubin

cc:

AUSA Andrew Jones
AUSA Jane Y. Chong

---

[2] References are to the page and line numbers of the transcript of the audio recording.